# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IAN HARKER and CORRADINA BALDACCHINO,** Individually, and as Parents and Natural Guardians on Behalf of **GH, a Minor,** and in their own right<br>2219 Greenhouse Road, No. 4114<br>Houston, TX 77084<br><br>**Plaintiffs**<br><br>     v.<br><br>**JOHN O. CHAN, M.D.**<br>1086 Franklin Street<br>Johnstown, PA 15905<br><br>**CONEMAUGH MEMORIAL MEDICAL CENTER**<br>1086 Franklin Street<br>Johnstown, PA 15905<br><br>**CONEMAUGH PHYSICIAN GROUP**<br>1086 Franklin Street<br>Johnstown, PA 15905<br><br>**CONEMAUGH HEALTH SYSTEM, INC.**<br>1086 Franklin Street<br>Johnstown, PA 15905<br><br>**DUKE LIFEPOINT HEALTHCARE**<br>330 Seven Springs Way<br>Brentwood, TN 37027<br><br>**Defendants** | **CIVIL ACTION**<br>**NO.:** 3:15-cv-277<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

1.　　Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00.

2.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because (1) some or all defendants are residents of this judicial district and/or (2) the acts and omissions that form the subject matter of this action occurred in this judicial district.

3.     For purposes of diversity under 28 U.S.C. § 1332, Defendants are all citizens of the Commonwealth of Pennsylvania and Plaintiffs are citizens of the State of Texas.

4.     Plaintiffs, Ian Harker and Corradina ["Corry"] Baldacchino, bring this action individually and as the parents and natural guardians on behalf of their minor daughter, GH.[1] Ian Harker and Corry Baldacchino are adult citizens of the State of Texas, currently residing at 2219 Greenhouse Road, No. 4114, Houston, Texas, 77084.

5.     Minor-Plaintiff, GH (hereinafter "minor-daughter GH"), is a citizen of the State of Texas and resides therein with her parents at 2219 Greenhouse Road, No. 4114, Houston, Texas, 77084.

6.     Defendant, John O. Chan, M.D. ["Dr. Chan"], was at all times material hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of neonatology and/or pediatrics.   Dr. Chan maintained a medical practice, office, and place of business at, among other sites, 1086 Franklin Street, Johnstown, Pennsylvania 15905.  Plaintiffs are asserting a professional liability claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "A."

7.     Defendant, Conemaugh Memorial Medical Center (a.k.a. Conemaugh Valley Memorial Hospital), was at all times material hereto, a professional healthcare facility and

---

[1] Pursuant to LCvR 5.2D(2), Plaintiffs have identified Minor-Plaintiff by child's initials only and her identity will be readily identifiable and produced in Discovery.

corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania, which operates, owns, maintains, and/or controls a hospital, health care facility, and provider of health care and health care services located at 1086 Franklin Street, Johnstown, Pennsylvania 15905. Plaintiffs are asserting a professional liability claim against this defendant directly and for the conduct of its agents and employees. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "B."

8.     Defendant, Conemaugh Physician Group, was at all times material hereto, a corporation, Professional Corporation, professional association, professional partnership, or other jural entity organized according to and existing under the laws of the Commonwealth of Pennsylvania and presently owns, maintains, operates and controls professional offices at, among other sites, 1086 Franklin Street, Johnstown, Pennsylvania 15905. Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents and employees. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "C."

9.     Defendant, Conemaugh Health System, Inc., was at all times material hereto, a professional healthcare facility and corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania which operates, owns, maintains, and/or controls a hospital, health care facility, and provider of health care and health care services located at 1086 Franklin Street, Johnstown, Pennsylvania 15905. Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its

3

agents and employees.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "D."

10.     Defendant, Duke Lifepoint Healthcare, was at all times material hereto, a corporation or other jural entity organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address at 330 Seven Springs Way, Brentwood, Tennessee 37027 and an address at which it was regularly conducting business at 1086 Franklin Street, Johnstown, Pennsylvania 15905.  Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents and employees.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "E."

11.     At all times material hereto, Dr. Chan acted in the capacity of minor-daughter GH's physician and was the actual, apparent, or ostensible agent, servant, or employee of Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and/or Duke Lifepoint Healthcare and was acting within the scope of his professional duties for Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and/or Duke Lifepoint Healthcare while providing medical care and treatment to minor-daughter GH.

12.     At all times material hereto, Defendants engaged agents, servants, and/or employees, including Ann Becquet, CRNP, Kate Schmucker, PA-C, Marilyn Harrington, CRNP, and any other physicians, physician extenders, nurses and healthcare personnel who provided care to minor-daughter GH at Conemaugh Memorial Medical Center and whose identities are known only to Defendants in the absence of discovery, all of whom were acting within the scope of their professional duties for Conemaugh Memorial Medical Center, Conemaugh Physician

4

Group, Conemaugh Health System, Inc., and/or Duke Lifepoint Healthcare while providing medical care and treatment to minor-daughter GH at Conemaugh Memorial Medical Center.

13.     At all times material hereto, Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and Duke Lifepoint Healthcare were acting by and through their actual, apparent, or ostensible agents, servants and employees while providing medical care and treatment to minor-daughter GH.

14.     At all times material hereto, some or all Defendants may have been agents of each other.

## **OPERATIVE FACTS**

15.     In 2012, Corry Baldacchino, age 35 and pregnant for the first time with an Estimated Due Date of March 2, 2012, received her prenatal care in her home state of Texas.

16.     On December 24, 2012, while visiting family in Pennsylvania, Corry Baldacchino presented to Conemaugh Memorial Medical Center at 30.2 weeks gestation with preterm, premature rupture of membranes, for which she was admitted.

17.     On December 27, 2012, at 30.5 weeks gestation, Corry Baldacchino underwent an uneventful and atraumatic spontaneous vaginal delivery of minor-daughter GH.

18.     On December 27, 2012, at birth, minor-daughter GH was a vigorous and normal appearing baby girl who weighed 1,720 grams (3 pounds, 13 ounces).

19.     On December 27, 2012, shortly after birth, minor-daughter GH's physical exam revealed a large right-sided cephalohematoma with no evidence of trauma and a beautiful, thick head of hair.

20.     On December 27, 2012, a CT scan of minor-daughter GH's head confirmed the presence of a cephalohematoma on the right side of her head with no evidence of subgaleal hemorrhage.

21.     On December 27, 2012, despite minor-daughter GH's radiologic findings confirming the cephalohematoma, Dr. Chan diagnosed minor-daughter GH with a probable subgaleal hemorrhage.

22.     On December 27, 2012, Dr. Chan treated minor-daughter GH for a subgaleal hemorrhage by having an Ace Bandage wrapped around her head as a pressure dressing.

23.     On December 27, 2012, at 1:00 p.m., Dr. Chan and/or Ann Becquet, CRNP ordered minor-daughter GH's head wrapped with an Ace Bandage.

24.     On December 27, 2012, at approximately 1:00 p.m., Kate Schmucker, PA-C wrapped minor-daughter GH's head with an Ace Bandage.

25.     On December 28, 2012, at 08:30 a.m., Ann Becquet, CRNP changed minor-daughter GH's Ace Bandage head wrap.

26.     On December 28, 2012, by 8:00 p.m., minor-daughter GH's head was oozing serous fluid with increased edema noted above the Ace Bandage head wrap.

27.     On December 28, 2012, at 8:00 p.m., Kate Schmucker, PA-C loosened minor-daughter GH's Ace Bandage head wrap.

28.     On December 29, 2012, by 02:00 a.m., minor-daughter GH's head was draining serous fluid through the right side of her Ace Bandage head wrap.

29.     On December 29, 2012, by 08:00 a.m., minor-daughter GH's head was draining large amounts of serous fluid through her Ace Bandage head wrap.

6

30.   On December 29, 2012, minor-daughter GH was unable to open her right eye from severe swelling in her right upper eyelid while the Ace Band head wrap was on.

31.   On December 29, 2012, at 10:00 a.m., Dr. Chan or Marilyn Harrington, CRNP ordered minor-daughter GH's head wrap removed.

32.   On December 29, 2012, at 11:00 a.m., minor-daughter GH's Ace Bandage head wrap was removed.

33.   On December 29, 2012, after minor-daughter GH's Ace Bandage head wrap was removed, abrasions on both sides of her head with areas of dark bruising on her upper forehead were immediately identified.

34.   On December 29, 2012, by 1:45 p.m., minor-daughter GH's head was draining large amounts of serous fluid onto her linens.

35.   On December 29, 2012, by 1:45 p.m., the severe swelling in minor-daughter GH's right upper eyelid was improving.

36.   On December 29, 2012, by 8:00 p.m., areas of minor-daughter GH's head were becoming necrotic with open areas on her scalp and forehead.

37.   On December 29, 2012, by 8:00 p.m., minor-daughter GH's head was reddened around the periphery where the Ace Bandage head wrap had been and her head was oozing large amounts of drainage.

38.   On December 29, 2012, by 11:30 p.m., multiple areas of minor-daughter GH's head were open and painful.

39.   On December 30, 2012, by 08:00 a.m., scattered areas on both sides of minor-daughter GH's scalp were necrotic, bruised, open, and draining large amounts of serous fluid.

40.     On December 31, 2012, pressure spots caused by the Ace Bandage head wrap were noted on minor-daughter GH's head with scattered areas of necrosis on both sides of her scalp and forehead and she continued to drain large amounts of serous fluid.

41.     On January 7, 2013, Kamran Shayesteh, D.O. ["Dr. Shayesteh"], a plastic surgeon, evaluated minor-daughter GH's scalp wounds and found black eschar that extended continuously from above the left ear and around the back of her head to the above the right ear with damage to the skin and eschar anteriorly over both temporal areas and extending over the anterior fontanel.

42.     On January 7, 2013, Dr. Shayesteh concluded that minor-daughter GH's scalp wounds were caused by some type of pressure injury.

43.     While admitted to Conemaugh Memorial Medical Center, minor-daughter GH's head was repeatedly cleaned and washed to remove necrotic debris and dead tissue, causing her to cry out from pain.

44.     While admitted to Conemaugh Memorial Medical Center, just touching minor-daughter GH's head caused her to cry out in pain.

45.     While admitted to Conemaugh Memorial Medical Center, necrosis and excoriation of minor-daughter GH's scalp caused her to lose much of her hair, leaving large bald patches.

46.     Minor-daughter GH remained at Conemaugh Memorial Medical Center until January 15, 2013, at 19 days of age, at which time she was transferred via Air Flight to Texas Children's Hospital in Houston for evaluation and treatment of her scalp wounds by a pediatric plastic surgeon capable of performing extensive craniofacial surgery.

47.     From January 15, 2013 through February 6, 2013, minor-daughter GH was admitted to Texas Children's Hospital.

48.     At Texas Children's Hospital, minor-daughter GH was evaluated and treated by Laura A. Monson, M.D., a pediatric plastic surgeon.

49.     At Texas Children's Hospital, minor-daughter GH was diagnosed with severe scalp wounds caused by pressure-induced tissue ischemia/necrosis.

50.     Currently, at nearly 3 years of age, minor-daughter GH's head and scalp are horribly scarred and disfigured and her wounds have still not completely healed.

51.     Currently, at nearly 3 years of age, Dr. Monson continues to follow minor-daughter GH with plans to perform multiple, extensive, highly risky and painful reconstructive surgeries on her head and scalp beginning within a few years.

52.     Regardless of any and all reconstructive plastic surgery repairs in the future, minor-daughter GH's head and scalp will forever be significantly disfigured.

53.     As a direct and proximate result of Defendants' negligent treatment of minor-daughter GH while admitted to Conemaugh Memorial Medical Center from December 27, 2012 to January 15, 2013, minor-daughter GH was caused to suffer severe and permanent damage to her head, scalp and skull, resulting in catastrophic injuries.

54.     As a direct and proximate result of Defendants' negligent treatment of minor-daughter GH while admitted to Conemaugh Memorial Medical Center from December 27, 2012 to January 15, 2013, minor-daughter GH will require multiple high-risk, complex surgical procedures to treat her catastrophic injuries.

55.     As set forth more fully below, the care and treatment provided by Defendants and their agents, servants and/or employees to minor-daughter GH, as set forth herein, was negligent and a substantial factor that increased the risk of harm and/or caused minor-daughter GH to suffer the following injuries and their sequela:

    a.    pressure ischemia and necrosis of the forehead and scalp;

    b.    ischemia/necrosis of the skin and underlying tissues of the scalp;

    c.    ischemia/necrosis of the skull and periosteum;

    d.    bruising, swelling, edema and fissures of the forehead and scalp;

    e.    extensive eschars of the scalp;

    f.    severe scarring of the skin, underlying tissues of the scalp, and skull;

    g.    swelling and injury around the right eye;

    h.    skull damage preventing and/or delaying closure of the anterior fontanel;

    i.    loss of hair;

    j.    permanent alopecia;

    k.    future need for high-risk, complex surgical procedures;

    l.    future risk of infection and skin breakdown;

    m.    past medical expenses;

    n.    future medical expenses;

    o.    past pain and suffering;

    p.    future pain and suffering;

    q.    loss of life's pleasures;

    r.    mental anguish;

    s.      embarrassment and humiliation.

    t.      permanent physical disabilities;

    u.      permanent cosmetic disabilities;

    v.      scarring and disfigurement;

    w.      other incidental expenses.

56.    The injuries of minor-daughter GH, as described herein, were caused solely and wholly by reason of the negligence and carelessness of Defendants, as set forth herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs.

57.    As a direct and proximate cause of the negligent treatment provided by Defendants, their agents, servants and/or employees, as set forth herein, Plaintiffs, Ian Harker and Corry Baldacchino, as parents and natural guardians on behalf of minor-daughter GH, and in their own right, claim the full measure of damages allowable under the law.

### COUNT I – NEGLIGENCE
### PLAINTIFFS v. DR. CHAN, CONEMAUGH MEMORIAL MEDICAL CENTER, CONEMAUGH PHYSICIAN GROUP, CONEMAUGH HEALTH SYSTEM, INC., AND DUKE LIFEPOINT HEALTHCARE

58.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

59.    The negligent acts and omissions of Dr. Chan, and through him, Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and Duke Lifepoint Healthcare, in his medical management, care, and treatment of minor-daughter GH, as set forth in the predicate facts stated above, include, but are not limited to, the following:

    a) Incorrectly diagnosing subgaleal hemorrhage;

    b) Failing to adequately confer with the radiologist regarding minor-daughter

11

GH's CT scan of the head;

c) Ignoring the findings reported by the radiologist reviewing minor-daughter GH's CT scan of the head;

d) Failing to diagnose the cephalohematoma;

e) Failing to appropriately manage the cephalohematoma;

f) Failing to consider the cephalohematoma when wrapping minor-daughter GH's head with an Ace Bandage:

g) Treating minor-daughter GH with an Ace Bandage head wrap;

h) Treating presumed subgaleal hemorrhage with an Ace Bandage head wrap;

i) Treating minor-daughter GH with an Ace Bandage head wrap in the presence of a cephalohematoma;

j) Allowing the Ace Bandage head wrap to be applied by physician extenders;

k) Allowing the Ace Bandage head wrap to be wrapped too tightly;

l) Failing to appropriately and adequately supervise the application of the Ace Bandage head wrap;

m) Failing to appropriately and adequately oversee and manage the Ace Bandage head wrap;

n) Failing to timely remove the Ace Bandage head wrap;

o) Failing to timely recognize signs and symptoms of tissue ischemia and/or necrosis caused by the Ace Bandage head wrap;

p) Failing to timely remove the Ace Bandage head wrap in the face of signs and symptoms of underlying tissue ischemia and/or necrosis;

q) Failing to advise the nursing staff and physician extenders of signs and symptoms of tissue ischemia and/or necrosis caused by the Ace Bandage head wrap.

60.     The carelessness and negligence of Dr. Chan, and through him, Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and Duke Lifepoint Healthcare, in his medical management, care, and treatment of minor-daughter GH, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by minor-daughter GH.

**COUNT II – NEGLIGENCE**
**PLAINTIFFS v CONEMAUGH MEMORIAL MEDICAL CENTER, CONEMAUGH PHYSICIAN GROUP, CONEMAUGH HEALTH SYSTEM, INC.,**
**AND DUKE LIFEPOINT HEALTHCARE**

61.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

62.     The negligent acts and omissions of Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and Duke Lifepoint Healthcare, through their agents, servants, and employees, including Ann Becquet, CRNP, Kate Schmucker, PA-C, Marilyn Harrington, CRNP, and any other physicians, physician extenders, nurses and healthcare personnel who provided care to minor-daughter GH at Conemaugh Memorial Medical Center and whose identities are known only to Defendants in the absence of discovery, in their medical management, care, and treatment of minor-daughter GH, as set forth in the predicate facts stated above, include, but are not limited to, the following:

a) Failing to consider the cephalohematoma when wrapping minor-daughter GH's head with an Ace Bandage:

13

b) Treating minor-daughter GH with an Ace Bandage head wrap;

c) Treating presumed subgaleal hemorrhage with an Ace Bandage head wrap;

d) Treating minor-daughter GH with an Ace Bandage head wrap in the presence of a cephalohematoma:

e) Applying the Ace Bandage head wrap too tightly;

f) Failing to appropriately and adequately supervise the application of the Ace Bandage head wrap;

g) Failing to appropriately and adequately oversee and manage the Ace Bandage head wrap;

h) Failing to timely remove the Ace Bandage head wrap;

i) Failing to timely recognize signs and symptoms of tissue ischemia and/or necrosis caused by the Ace Bandage head wrap;

j) Failing to timely remove the Ace Bandage head wrap in the face of signs and symptoms of underlying tissue ischemia and/or necrosis;

k) Failing to adequately and timely advise Dr. Chan and/or the physician extenders of the serous fluid draining from minor-daughter GH's head;

l) Failing to timely recognize signs and symptoms of tissue ischemia and/or necrosis caused by the Ace Bandage head wrap;

m) Failing to adequately question Dr. Chan and/or institute the chain of command when ordered by Dr. Chan to apply the Ace Bandage head wrap.

63.     The carelessness and negligence of Conemaugh Memorial Medical Center, Conemaugh Physician Group, Conemaugh Health System, Inc., and Duke Lifepoint Healthcare,

14

through their agents, servants, and employees, including Ann Becquet, CRNP, Kate Schmucker, PA-C, Marilyn Harrington, CRNP, and any other physicians, physician extenders, nurses and healthcare personnel who provided care to minor-daughter GH at Conemaugh Memorial Medical Center and whose identities are known only to Defendants in the absence of discovery, in their medical management, care, and treatment of minor-daughter GH, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by minor-daughter GH.

## COUNT III – CORPORATE (DIRECT) NEGLIGENCE
## PLAINTIFFS v CONEMAUGH MEMORIAL MEDICAL CENTER

64. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

65. This is a claim of corporate negligence for the breaches of Conemaugh Memorial Medical Center's non-delegable duties owed to minor-daughter GH.

74. The corporate (direct) negligence of Conemaugh Memorial Medical Center arising out of the care and treatment rendered to minor-daughter GH and which Conemaugh Memorial Medical Center had actual and/or constructive knowledge of and should have known, recognized, and ameliorated, as fully set forth in the operative facts above, consisted of one or more of the following:

a) Failure to formulate, adopt, and enforce adequate rules and policies for the treatment of newborn infants, including minor-daughter GH, with a cephalohematoma:

15

b)      Failure to formulate, adopt, and enforce adequate rules and policies for the treatment of newborn infants, including minor-daughter GH, with a potential subgaleal hemorrhage:

c)      Failure to formulate, adopt, and enforce adequate rules and policies to ensure newborn infants, including minor-daughter GH, are not treated with Ace Bandage head wraps;

d)      Failure to formulate, adopt, and enforce adequate rules and policies to ensure that physician extenders, without appropriate and adequate supervision, are applying Ace Bandage head wraps to newborn infants, including minor-daughter GH;

e)      Failure to formulate, adopt, and enforce adequate rules and policies to ensure that only physicians and/or physician extenders with specialized training in the use of head wraps on newborn infants, apply Ace Bandage head wraps to newborn infants, including minor-daughter GH;

f)      Failure to formulate, adopt, and enforce adequate rules and policies to ensure adequate observation and management of newborn infants, including minor-daughter GH, whose head has been wrapped with an Ace Bandage;

g)      Failure to formulate, adopt, and enforce adequate rules and policies that precludes the application of an Ace Bandage head wrap in the in the presence of a cephalohematoma;

h)      Failure to select and retain physicians staffing the NICU competent in the diagnosis and/or treatment of cephalohematoma and subgaleal hemorrhage;

16

    i)        Failure to oversee all persons who practice medicine within the four walls of the hospital to ensure that minor-daughter GH was appropriately evaluated and treated in the NICU in a manner sufficient to avoid the injuries sustained by her.

66.    The carelessness and negligence of Conemaugh Memorial Medical Center, directly, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by Giada Harker.

**WHEREFORE**, Plaintiffs, Ian Harker and Corradina Baldacchino, as parents and natural guardians on behalf of their daughter, minor-daughter GH, and in their own right, demand judgment against all defendants, jointly, severally, or in the alternative, in a sum in excess of the local arbitration limits, exclusive of interest, costs, and damages for prejudgment delay.

Respectfully submitted,

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

Dated: 10/29/15

THOMAS R. KLINE, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000
***Attorneys for Plaintiffs***

# EXHIBIT "A"

## CERTIFICATE OF MERIT AS TO JOHN O. CHAN, M.D.

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: 10/29/15

_____

MARK S. POLIN, ESQUIRE

2

# EXHIBIT "B"

## CERTIFICATE OF MERIT AS TO CONEMAUGH MEMORIAL MEDICAL CENTER

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _10/29/15_                                 _____

                                              MARK S. POLIN, ESQUIRE

# EXHIBIT "C"

**CERTIFICATE OF MERIT AS TO CONEMAUGH PHYSICIAN GROUP**

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■    the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the

claim against this defendant.

Date: _10/28/15_                              _____

                                       MARK S. POLIN, ESQUIRE

2

EXHIBIT "D"

**CERTIFICATE OF MERIT AS TO CONEMAUGH HEALTH SYSTEM, INC.**

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■    the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the

claim against this defendant.

Date: _10/29/15_                                              _____

                                                                 MARK S. POLIN, ESQUIRE

2

# EXHIBIT "E"

## CERTIFICATE OF MERIT AS TO DUKE LIFEPOINT HEALTHCARE

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐     An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    OR

☑     An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    OR

☑     the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

    OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the

claim against this defendant.

Date: _10/28/15_                                              

                                         MARK S. POLIN, ESQUIRE

2